January 10, 1911.

————————o————————

5185.

(Court of Appeal, Parish of Orleans).

## MISS DEBORAH KLEFFORTH vs. NEW ORLEANS BREWING COMPANY.

1. An offer will be presumed to have been withdrawn or rejected unless accepted within the time which, from the situation of the parties or the nature of the contract, the offer may have been presumed to have been open for acceptance or rejection

2. A reconduction of a lease is presumed from the mere fact of the tenant holding over without objection on the part of the landlord; and in the case of urban property the lease is reconducted for a monthly term, all other stipulations and conditions of

the original lease, except its term, being continued in full force and effect.

Appeal from the Civil District Court, Division "E."

Théo. Cotonio, for plaintiff and appellant.

Howe, Fenner, Spencer & Cocke and Phelps, for defendant and appellee.

GODCHAUX, J.—There existed between plaintiff, as landlord, and defendant, as tenant, a written lease running from October 15, 1908, to December 31, 1909, which provided, among other things, that a failure to pay rent as it monthly matured would have the effect of maturing the rent for the entire unexpired term. Claiming that the lease had been renewed or, in the alternative, reconducted for a term of one year from December 31, 1909, and that defendant had failed to pay the rent for the month of January, 1910, plaintiff sued for the rent for the entire year of 1910 which she avers was matured by the failure to pay the January rent.

On the question of renewal it appears that on November 12, 1909, in response to plaintiff's communications inquiring whether the defendant desired "to renew the lease" the latter replied that they desired to "lease the place again for one year with the privilege of two more" and stated that the closet was badly in need of repair and would require being cemented at once. The plaintiff made no reply to this communication, made no effort to repair the closet and permitted the defendant, through its sub-tenant, to remain in possesion of the property throughout January, 1910; and later, and then on February 2, 1910, wrote to defendant calling its attention to the fact that the January rent was not paid and informing it that plaintiff considered that the lease had been

renewed for another year, and notifying defendant that it would be held as tenant for that time. To this communication the defendant immediately replied that it had never renewed the lease and denied that it had possession or that it was liable for any rent after December 31, 1909, it further appears that defendant's tenant was in fact in possession of the premises at the time of the filing of this suit, namely, February 7, 1910, although defendant had vainly endeavored, extra-judicially, to prevail upon its sub-tenant to vacate the premises at the expiration of the original lease, December 31, 1909. It is upon these facts alone that plaintiff relies to establish a renewal of the original lease.

The communication of November 12, 1909, evidences an offer on defendant's part to again lease the property provided a privilege of renewal for an additional two years be granted and provided further that the closet be restored to a condition of good repair. From the situation of the parties and from the nature of the contract such an offer contemplated an acceptance either immediately or, at least, prior to the termination of the lease on December 31, 1909, but up to this latter date plaintiff had not, having accepted it, expressly, or by performing some act, such, for instance, as the repair of the closet, from which an acceptance might be implied, the offer may be considered to have then been either withdrawn or rejected, and thereafter neither the fact of permitting defendant to hold over nor plaintiff's statement of February 2, 1910, that it considered the lease renewed, could constitute an acceptance, for the offer no longer existed, but had lapsed. Moreover, inasmuch as it devolved upon plaintiff to establish an acceptance and consequent renewal; and inasmuch as the mere fact of holding over is no more indicative of a renewal than it is of an intention to tacitly reconduct the lease, plaintiff cannot be held to have sustained the burden of proof imposed upon her.

Upon the whole record there is no evidence to satisfactorily prove a renewal.

While a holding over without objection on the landlord's part after the termination of the lease effected a reconduction of the lease, this reconduction had the effect of converting the term of the lease into one from month to month, and not for a year, as contended by plaintiff.

> Morrell vs. Lion, 30 An. 255; Geheebe vs. Stanby, 1 An. 17; Dolese vs. Barberot, 9 An. 352.

The judgment of the court below awarded plaintiff rent at $25 a month (the rental fixed in the original lease) for the months of January and February with legal interest on the rent of each month from the respective maturities thereof, and this judgment requires amendment in certain particulars.

The original lease which, by the effect of the reconduction, was continued as to all its stipulations and conditions, except its terms, in full force and effect, provided, among other things, that the tenant at the termination of the lease should evidence the vacating of the premises by the returning of the keys thereto; and further provided that the landlord should be entitled to 10% attorney's fees should the rent not be paid at maturity.

As the stipulation in the original lease as to attorney's fees was carried into the reconducted lease, it is clear that plaintiff was entitled to an allowance for attorney's fees in the judgment.

As to the amount of rent allowed in the lower court's judgment, while it appears that defendant's sub-tenant vacated the premises on the last day of February, 1910, still this was done without the knowledge of, or notification to the landlord, much less was it accompanied by a delivery of the keys as required by the lease. Consequently this did not constitute delivery of possession so

as to absolve the tenant from liability for future rent. But in the early part of March, 1910, plaintiff instituted summary proceedings by rule to oust defendant from possession on the ground of the latter's failure to pay the January rent, and on March 17, 1910, the formal judgment of ouster therein rendered became executory.

This judgment enabled plaintiff to secure immediate possession, and accordingly defendant's liability for rent continued until that date. The judgment of the lower court must be further amended so as to allow rent for this period.

It is accordingly ordered and decreed that the judgment of the lower court be amended, and to that end it is now decreed that there be judgment in favor of plaintiff and against defendant for the sum of $63.75, with legal interest on $25 thereof from January 31, 1910; on $25 thereof from February 28, 1910; and on $13.75 thereof from March 17, 1910; together with 10% attorney's fees on the amount of this judgment. Defendant and appellee to pay the costs of both courts.

January 10, 1911.

———o———

5192.

(Court of Appeal, Parish of Orleans).